## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                        Crim. No. 25-879 JB

**HERIBERTO SALAZAR AMAYA et al.,**

      Defendants.

## UNITED STATES' MOTION TO DETAIN

### I.    BACKGROUND

The Heriberto Salazar Amaya ("HSA") drug trafficking organization ("DTO") is a Mexican poly-substance drug trafficking organization that operated in Albuquerque, New Mexico, Denver, Colorado, Phoenix, Arizona, Las Vegas, Nevada, Salem, Oregon, and Layton, Utah, among other places. The DEA has been investigating the HSA DTO and its various levels of operation since 2024. Through physical surveillance, undercover operations, prospective location information warrants, trackers, financial analyses, and other special investigative techniques, DEA agents have learned that the basic structure of the HSA DTO is framed around HSA receiving orders for drugs from drug customers and dispatching couriers to deliver the drugs. The couriers followed a daily schedule, which involved load vehicles and stash locations, all coordinated by HSA, to conduct bulk deliveries across several metropolitan areas.

### A.  The Charges

On April 24, 2025, the United States charged fourteen Defendants in a twelve-count indictment with: Count 1: 21 U.S.C. § 846: Conspiracy; Counts 2, 3, and 9: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-

(2-phenylethyl)-4-piperidinyl] propanamide); 18 U.S.C. § 2: Aiding and Abetting; Counts 4 and 6: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); Counts 5 and 7: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); Count 8: 18 U.S.C. § 924(c)(1)(A)(i): Possessing a Firearm in Furtherance of a Drug Trafficking Crime; Count 10: 8 U.S.C. §§ 1326(a) and (b): Reentry of a Removed Alien; Count 11: 8 U.S.C. § 1324a(a)(1)(A): Unlawful Employment of Illegal Alien; and Count 12: 8 U.S.C. § 1324(a)(1)(A)(v)(I): Conspiracy to Harbor Illegal Aliens. *See* Doc. 26.[1]

**B. The Takedown**

On April 28, 2025, the DEA conducted a coordinated takedown of the HSA DTO spanning five-states: New Mexico, Arizona, Nevada, Utah, and Oregon. The photographs below show representative samples of what was seized during that operation.

---

[1] As part of the operation discussed herein, law enforcement filed three criminal complaints on defendants not included in the initial indictment.

1) *Albuquerque and Santa Fe, New Mexico*



















2)  *Salem, Oregon*



3)  *Phoenix, Arizona*







4) *Layton, Utah*





*5)  Las Vegas, Nevada*



*6)  The Tally*

During this takedown, as shown in the above photographs, the DEA seized the following:

• Approximately 4,193,000 fentanyl pills

• Approximately $4,433,000.00 cash

• Approximately 79 pounds of meth

• Approximately 4.5 kg of heroin

• Approximately 7.5 kg of cocaine

• Approximately 11.5 kg fentanyl powder

15

- Approximately 41 weapons, some fully automatic conversion devices, and some without serial numbers ("ghost guns")

- 7 vehicles

  o 2021 Ford F-150 Shelby

  o 2023 Ford F-150 Raptor

  o 2024 Mercedes GLE 63s AMG

  o 2024 Dodge Ram TRX Mammoth 1000

  o 2024 GMC 2500 Denali

  o 2021 Dodge Ram TRX 1500

  o 2019 Ford F-150 Raptor

## II.    ARGUMENT

### A.  The Government is Entitled to a Detention Hearing

The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (*per curiam*).  At step one, the court must decide the threshold question of whether 18 U.S.C. § 3142(f) authorizes detention.  Here, the United States is entitled to a detention hearing since Defendants are charged with felony offenses for which the maximum sentence is life.  *See* § 3142(f)(1)(B); *see* 21 U.S.C. §§ 841(a)(1)-(2) and (b)(1)(A)(vi) (10 years to life); § 846 (same penalties as prescribed for the § 841 offense).  The Government is likewise entitled to a detention hearing since Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act.  *See* 18 U.S.C. § 3142(f)(1)(C).[2]

---

[2] As explained more below, the Government is also entitled to a detention hearing under § 3142(f)(2)(A).

**B. There is a Presumption of Detention**

Turning to the detention statute, the A-level charges and the currently charged 18 U.S.C. § 924(c) (see weapons above) create a rebuttable presumption that no condition or combination of conditions will reasonably ensure the appearance of Defendants as required nor reasonably ensure the safety of any other person and the community if Defendants are released. *See* 18 U.S.C. § 3142(e)(3)(A).

**C. The Factors Favor Detention**

In determining whether conditions of release can be fashioned, the court must consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, including ties to the community, employment, financial resources, criminal history, history of alcohol or substance abuse, and record concerning appearance at court proceedings, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. § 3142(g)(1) – (4). The factors weigh in favor of detaining Defendants for the reasons that follow.

*1) The Nature and Circumstances of the offense*

Defendants ran a continuing criminal enterprise, *see, e.g.,* 21 U.S.C. § 848, and they did so across a large swath of the United States. Given the interconnected nature of the HSA DTO, each Defendant must be viewed for their contributions to the DTO that trafficked cocaine, heroin, methamphetamine, millions of fentanyl pills, and pounds of concentrated fentanyl powder from Mexico into the United States. As the Court knows, fentanyl is a deadly narcotic that plagues communities and causes extreme violence and devastation against the citizens of the United States:

**Based on data available for analysis on: April 6, 2025**

*After opening the **drug class dropdown**, click the top of the dropdown menu again to make the checkboxes disappear.*







Defendants also must be viewed against the weapons that facilitated this large-scale trafficking and the millions of dollars in ill-gotten cash proceeds that flowed therefrom. The nature and circumstances of the conspiracy are sobering. The destruction that occurred in New Mexico,

Arizona, Utah, Nevada, Oregon, and Colorado at the hands of the HSA DTO mandate that Defendants remain in custody pending trial.

    *2) The Weight of the Evidence*

    The weight of the evidence is overwhelming:

- Approximately 4,193,000 fentanyl pills

- Approximately $4,433,000.00 cash

- Approximately 79 pounds of meth

- Approximately 4.5 kg of heroin

- Approximately 7.5 kg of cocaine

- Approximately 11.5 kg fentanyl powder

- Approximately 41 weapons, some with switches, and some ghost

- 7 vehicles

    In addition to the above evidence, undercover buys, surveillance, and other investigative techniques connect every Defendant to the HSA DTO.  This factor favors detention.

    *3) Dangerousness and Risk of Flight*

    The overwhelming evidence clearly demonstrates that Defendants pose a specific risk to the United States and the communities located therein—Defendants terrorized five states while operating one of the largest fentanyl DTOs in history.

    As for flight, several Defendants have direct ties to Mexico and are Mexican nationals. The charges, which are supported by overwhelming evidence, also speak for themselves: Defendants each face at least a mandatory ten years in prison, with the possibility of several additional charges carrying the same penalty. Some Defendants are looking at additional weapons-related charges that run consecutive to that ten-year term, ranging from an additional 5 to 30 years given the

automatic conversion devices on some of the weapons. All Defendants are potentially facing a continuing criminal enterprise offense.  This factor weighs in favor of detention.

## III.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court order Defendants be detained pending trial.

Respectfully submitted,

RYAN ELLISON
United States Attorney

*/s/ Electronically filed on April 29, 2025*
MATTHEW J. MCGINLEY
BLAKE NICHOLS
RAQUEL RUIZ-VELEZ
Assistant United States Attorney
201 Third Street NW, Suite 900
Albuquerque, 87102

I HEREBY CERTIFY that on January 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to opposing counsel of record on this date.

*Electronically Filed 4/29/2025*
MATTHEW J. MCGINLEY
Assistant United States Attorney